UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOREN ALEXIS THOMPSON,<br><br>    Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>    Defendant. | No. EDCV 13-1728 FFM<br><br>MEMORANDUM DECISION AND ORDER |

Plaintiff brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration denying her application for supplemental security income benefits. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Pursuant to the October 10, 2013 Case Management Order, on June 6, 2014, the parties filed a Joint Stipulation detailing each party's arguments and authorities. The Court has reviewed the administrative record ("AR"), filed by defendant on April 4, 2014, and the Joint Stipulation. For the reasons stated below, the decision of the Commissioner is reversed and the matter remanded for further proceedings.

///

///

///

## PROCEDURAL HISTORY

On March 15, 2010, plaintiff filed an application for supplemental security income benefits. Plaintiff's application was denied initially and upon reconsideration. Plaintiff filed a request for a hearing before an administrative law judge ("ALJ"). ALJ Margaret M. Craig held a hearing on January 25, 2012. On May 24, 2012, the ALJ issued a decision denying benefits. (AR 18-27.) Plaintiff sought review of the decision before the Social Security Administration Appeals Council and submitted additional evidence. The Council denied review on July 24, 2013. (AR 1-3.) Plaintiff commenced the instant action on October 4, 2013.

## CONTENTIONS

Plaintiff raises one issue in this action:

1. Whether the ALJ properly considered plaintiff's treating physicians' opinions and properly developed the record.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); *Desrosiers v. Secretary of Health & Human Servs.*, 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 929-30 (9th Cir. 1986). Where evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984). However, even if

substantial evidence exists in the record to support the Commissioner's decision, the decision must be reversed if the proper legal standard was not applied. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1014-15 (9th Cir. 2003).

# DISCUSSION

**Whether the ALJ properly considered plaintiff's treating physicians' opinions and properly developed the record.**

Plaintiff contends that the ALJ improperly rejected the opinions of Dr. Myint (treating psychiatrist) and Dr. Small (treating physician). The ALJ relied on the opinion of a consultative examining physician, Dr. Rodriguez (examining psychiatrist), with respect to his conclusions as to plaintiff's mental capacity.

**A. Legal Standard**

In evaluating medical opinions, the case law and regulations distinguish among three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), limited on other grounds, *Saelee v. Chater*, 94 F.3d 520, 523 (9th Cir. 1996); *see also* 20 C.F.R. §§ 404.1502, 416.927(d). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987); *see also* 20 C.F.R. § 416.927(d)(2). The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician. *Lester*, 81 F.3d at 830; *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990).

The Ninth Circuit has held that an ALJ may reject a treating physician's uncontradicted opinion only with "clear and convincing" reasons supported by substantial evidence in the record. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (quoting *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993)) (internal quotation marks omitted). If the treating physician's opinion is controverted, the ALJ must still

provide "specific and legitimate" reasons, supported by substantial evidence in the record, in order to reject the treating physician's opinion. *Lester*, 81 F.3d at 830; *Holohan v. Massanari*, 246 F.3d 1195, 1202-03 (9th Cir. 2001). "The ALJ could meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal quotation marks omitted).

**B. The ALJ's Discussion of the Opinions of Dr. Myint and Dr. Small**

The ALJ found plaintiff to suffer from, as is pertinent here, the severe impairment of psychotic disorder. (AR 20.) The ALJ adopted a residual functional capacity largely based on the evaluation of consultative examining psychiatrist Dr. Rodriguez. (*See* AR 419.) The ALJ gave "little weight" and "no weight" to the opinions of plaintiff's treating physicians, Dr. Myint and Dr. Small. The ALJ provided the following reasons for rejecting the treating physicians' opinions:

> The undersigned has considered and gives little weight to the mental disorder questionnaire form filled out by Dr. Myint on March 31, 2011 (Exhibit 9F). This report relies heavily on statement s [sic] by the claimant and her mother, and contains very few clinical findings by Dr. Myint. As Dr. Myint sets forth no opinions but only the claimant's complaints, it is given little weight.
>
> The undersigned has considered and gives little weight to the disability statement by D. Small, M.D., who stated she reviewed claimant's medical history and evaluated her as disabled due to seizures (Exhibit 11F). This not [sic] supported by objective evidence and it is inconsistent with the record as a whole. As an opinion on an issue reserved to the Commissioner, this statement is not entitled to controlling weight and is not given special significance pursuant to 20 CFR 404.1527(e) and 416.927(e) and SSR 96-5. Dr. Small did not provide objective clinical or diagnostic findings to support the opinion, and there were no medical observations of any seizure

4

activity. This is inconsistent with the objective findings already discussed above in this decision, which were all normal tests. Therefore, this is given little weight.

This undersigned has considered and gives little weight to the medical opinion filled out by Fidelis Garcia, LMFT on March 25, 2011 (Exhibit 12F). This is not from an acceptable medical source, it is not supported by objective evidence, and it is inconsistent with the record as a whole. An opinion that is not from an acceptable medical source is not entitled to be given the same weight as a qualifying medical source opinion (20 CFR 404.1513(a) and (e); and 416.913(a) and (e)). Ms. Garcia did not provide objective clinical or diagnostic findings to support the functional assessment. This opinion is inconsistent with the objective findings already discussed above in this decision, which show the claimant is stable on medications. Therefore, this is given little weight.

The undersigned has considered and gives no weight to the medical opinion filled out by someone at Upland Community Counseling on July 13, 2011 (Exhibit 13F). The form was submitted by the claimant or her representative and the name of the physician is illegible making it impossible to determine the source of the statements made on the form. More importantly, the form only provides conclusions regarding the claimant's limitations without providing any objective evidence as an explanation for those limitations, and it is inconsistent with the record as a whole. Therefore, this is given no weight.

AR 24-25.

### C. The ALJ's Review of the Record

Given the ALJ's rejection, in part, of Dr. Myint's opinion as being inconsistent with the record as a whole, the ALJ's discussion of the record is significant. The ALJ described the medical record regarding plaintiff's mental condition, as follows:

5

As to mental conditions, the claimant was diagnosed on January 29, 2010 with schizophrenia, paranoid type; and a history of alcohol and methamphetamine dependence in remission (Exhibit 2F, p. 1). The claimant was noted as doing good, alert with no suicidal or homicidal ideation on October 4, 2010 (Exhibit 3F, p. 8). The claimant had mental status evaluations, which were within normal limits on October 3, 2008; April 9, 2009; and June 3, 2010 (Exhibits 2F, p. 4 and 36; and 3F, p. 4).

The undersigned has considered and gives little weight to the global assessment of functioning scores (GAF)[1] of 25, 30[2], 45[3], 48, 50, and 65[4] assessed to the claimant between October 15, 2006 and October 21, 2009 (Exhibits 2F, pp. 3, 7, 9-11, 32, and 35; and 7F, p. 6). GAF scores are just one tool used by clinicians to develop the clinical picture. They cannot be used in isolation from the rest of the evidence to make a disability decision.

---

[1] The GAF scale indicates the clinician's judgment of the individual's overall level of functioning. It is measured on a scale of 1 to 100 with 1 being persistent danger of hurting self or others and 100 being no symptoms.

[2] A GAF score of 31-40 indicates some impairment in reality testing or communication (e.g., speech is at time illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school) (Diagnostic and Statistical Manual of Mental Disorders Text Revision ("DSM"), 34 (4th ed. 2000)).

[3] A GAF score of 41-50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting ) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job) (Diagnostic and Statistical Manual of Mental Disorders Text Revision ("DSM"), 34 (4th ed. 2000)).

[4] A GAF score of 61-70 indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful relationships (Diagnostic and Statistical Manual of Mental Disorders Text Revision ("DSM"), 34 (4th ed. 2000)).

> It is noted that the GAF as a measure of functioning is highly subjective and less clinically helpful than the mental status examination (MSE). In this case, the MSE's were largely within normal limits; they did not document claimant experiencing suicidal ideation, obsessional rituals, serious impairment in social functioning, or conflicts with peers or coworkers. In fact, claimant lives with her family and engages in activities of daily living. The undersigned gives more weight to the objective details of the entire record, which more accurately reflects the claimant's impairments and limitations. Therefore, these are given little weight.
>
> . . . .
>
> The undersigned has considered and gives significant weight to Dr. Rodriguez who opined claimant had minimal limitations (Exhibit 7F). This was based on an in-person exam, the assessment is complete, specific facts are cited upon which the conclusion is based, and is substantially/largely consistent with the record as a whole. Therefore, it is given significant weight.

AR 24-25.

Dr. Rodriguez stated that he had reviewed plaintiff's records from the Patton State Hospital during the period of plaintiff's incarceration. (AR 413.) Remarkably, however, Dr. Rodriguez stated that "[t]he idea that [plaintiff's] paranoid psychosis was associated with the methamphetamines and cocaine use was not mentioned in the records." (AR 413.) In fact, the Patton State records refer both to the fact that drug use exacerbates her condition and that her psychosis persists even in the absence of drug use. (*See, e.g.*, AR 384 ("drugs worsen her symptoms of psychosis"); AR 382 ("[plaintiff] has shown these symptoms [delusions, hallucinations and disorganized behavior] in the absence of any substance use"); AR 384 (noting that although plaintiff has had eight months of sobriety, she continues to experience psychotic episodes).)

Perhaps based on his misreading of the record, Dr. Rodriguez opined that "if this

claimant was properly treated for ADHD and depression and she abstains from drugs and alcohol, she could easily recover from her symptoms within twelve months." (AR 419.) The Patton State Hospital records show otherwise. (*See, e.g.*, April 9, 2009 "Dispositional Court Report" at AR 383 ("Despite [plaintiff] being on multiple psychiatric medications to treat her symptoms, the hallucinations continue") and January 29, 2010 report at AR 348 ("[plaintiff's] illness is severe even while medicated").)

In addition, the ALJ seemed to misstate the record in material particulars. For example, the mental status evaluations cited by the ALJ, which according to the ALJ "were within normal limits," contained conclusions such as "By reason of [plaintiff's] severe mental disorder, [she] cannot be treated safely and effectively in the community," (AR 351); "Although [plaintiff] does not endorse any delusional beliefs or any auditory hallucinations when asked about these symptoms during the mental status examination, she has continually articulated delusional thoughts and auditory hallucinations periodically over the last three months and since her admission to Patton," (AR 383); and notation of "Delusional thinking" on June 3, 2010 assessment cited by ALJ (AR 389).

### D. Dr. Myint

With respect to the ALJ's rejection of Exhibit 13F, the Court notes that the ALJ acknowledged at the hearing that that exhibit had been prepared by Dr. Myint. (AR 36 ("[Plaintiff's counsel]: Just with respect to that 13F residual functional capacity form, I just wanted to point the Court's attention to Page 4 of 10F . . . which is the same signature from the doctor, Dr. Myint, so you can see it's the same doctor. [¶] ALJ: Okay.").) Moreover, although the form itself essentially contains only conclusions, those conclusions must be considered in connection with the other medical records by

///

///

8

Dr. Myint, most significantly Exhibit 9F, the mental disorder questionnaire. (AR 424-28.) Therefore, the reasons posited by the ALJ for discounting Exhibit 13F were not legitimate.

With respect to the ALJ's rejection of Exhibit 9F, although the report does extensively document what plaintiff and her mother related, those statements are supported by the records from Patton State Hospital. (*See, e.g.*, Exhibits 2F at 34-38 (AR 381-85); 2F at 6-7 (AR 353-54); and 2F at 1 (AR 348).) Moreover, "[a] psychiatric impairment is not as readily amendable to substantiation by objective laboratory testing as a medical impairment." *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) (*per curiam*); *Hartman v. Bowen*, 636 F. Supp. 129, 131-32 (N.D. Cal. 1986). Thus, in the case of mental impairments, clinical and laboratory data well may consist of the diagnoses and observations of professional psychiatrists and psychologists. *Blankenship*, 874 F.2d at 1121; *Hartman*, 636 F. Supp. at 132. Accordingly, "[t]he report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques." *Blankenship*, 874 F.2d at 1121; *see also Regennitter v. Commissioner of the Soc. Sec. Admin.*, 166 F.3d 1294, 1298-1300 (9th Cir. 1999) (holding that ALJ erred in rejecting examining psychologist's conclusions on ground that conclusions were inconsistent with mental status examination, where psychologist interviewed and tested claimant and permissibly credited claimant's subjective complaints). Moreover, as a general rule, the "subjective judgments of treating physicians . . . properly play a part in their medical evaluations" and thus must be given proper weight by the ALJ. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).

Therefore, the ALJ failed to provide a legitimate reason for discounting Dr. Myint's opinion.

/ / /

/ / /

**E.     Dr. Small**

The letter from Dr. Small contained nothing supporting his conclusions.  Thus, the ALJ properly rejected it on this basis.  *See Batson v. Commissioner, Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ properly discounted treating physician's opinion where, *inter alia*, opinion was in form of checklist).

**CONCLUSION**

For the foregoing reasons, the judgement of the Commissioner is reversed and the matter is remanded for further proceedings.

DATED: February 3, 2015

                                        /S/ FREDERICK F. MUMM
                                        FREDERICK F. MUMM
                                        United States Magistrate Judge